IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| H&B HOLDINGS, INC., | ) | |
| | ) | CASE NO. 19-82417-CRJ11 |
| EIN: XX-XXX516 | ) | CHAPTER 11 |
| | ) | |
| DEBTOR. | ) | |

**SECOND AMENDED DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF
H&B HOLDINGS, INC.
DEBTOR AND DEBTOR-IN-POSSESSION**


**FEBRUARY 21, 2020**

STUART M. MAPLES
MAPLES LAW FIRM, PC
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@mapleslawfirmpc.com
Attorney for Debtor-in possession

**Solicitation of Votes with Respect to the Chapter 11 Plan**

**of**

**H&B HOLDINGS, INC.**

THE MANAGEMENT OF H&B HOLDINGS, INC., DEBTOR AND DEBTOR-IN-POSSESSION (THE "DEBTOR" OR THE "COMPANY"), BELIEVES THAT THE DEBTOR'S CHAPTER 11 PLAN DATED FEBRUARY 21, 2020 (THE "PLAN"), IS IN THE BEST INTERESTS OF ITS CREDITORS. ALL CREDITORS ARE PROVIDED FOR IN THIS DISCLOSURE STATEMENT. TO BE COUNTED, YOUR BALLOT MUST BE DULY COMPLETED, EXECUTED, AND RECEIVED BY COUNSEL FOR THE DEBTOR, STUART M. MAPLES, MAPLES LAW FIRM, PC, 200 CLINTON AVENUE WEST, SUITE 1000, HUNTSVILLE, ALABAMA, 35801, BEFORE 5:00 P.M. ON _____ (THE "VOTING DEADLINE").

**ALL CREDITORS ARE ENCOURAGED TO READ AND CONSIDER CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT PRIOR TO SUBMITTING BALLOTS PURSUANT TO THIS SOLICITATION. THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN AND IS NOT INTENDED TO REPLACE CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN.**

-------------------------------------

ALL CAPITALIZED TERMS IN THIS DISCLOSURE STATEMENT NOT OTHERWISE DEFINED HEREIN HAVE THE MEANINGS GIVEN TO THEM IN THE PLAN. THE SUMMARIES OF THE PLAN AND THE OTHER DOCUMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE QUALIFIED BY REFERENCE TO THE PLAN AND SUCH OTHER DOCUMENTS THEMSELVES.

-------------------------------------

## I. INTRODUCTION.

### A. Preliminary Statement.

On August 13, 2019, H&B Holdings, Inc., debtor and debtor-in-possession (the "Debtor"), filed a voluntary Chapter 11 under of the Bankruptcy Code before the United States Bankruptcy Court for the Northern District of Alabama, Northern Division. The Debtor is managing its assets, business and financial affairs as a debtor-in-possession, subject to the supervision of the Bankruptcy Court and the provisions of the Bankruptcy Code.

As set forth in more detail below, the Plan provides that the Debtor shall be allowed to retain its assets, which are subject to certain liens and interest, of which the Debtor has agreed to pay as provided for in the Plan.

Accompanying this Disclosure Statement are copies of the following:

1. **The Order of the Bankruptcy Court dated** _____, approving this Disclosure Statement and solicitation and voting procedures related to the Plan and setting the hearing on confirmation of the Plan for _____.

2. **The Plan.**

3. **A ballot for accepting or rejecting the Plan.** Ballots are provided to holders of Allowed Claims in Classes 1, 2, 3, 4 and 5 so that they may vote to accept or reject the Plan under the provisions of the Bankruptcy Code. *See* Section I.B.2 ("Voting on the Plan") for additional information regarding ballots and voting procedures.

B. **Plan Confirmation Process.**

1. **Approval of Disclosure Statement.**

After notice and a hearing held on _____, by order dated _____, pursuant to § 1125 of the Bankruptcy Code, the Bankruptcy Court approved this Disclosure Statement as containing information of a kind, and in sufficient detail, that would enable a hypothetical reasonable investor typical of the holders of Claims or Interests in Classes 1, 2, 3, 4 and 5 to make an informed judgment whether to accept or reject the Plan. The Bankruptcy Court's approval of this Disclosure Statement, however, does not constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan.

2. **Voting on the Plan.**

a. <u>Who May Vote</u>. Pursuant to § 1126 of the Bankruptcy Code, holders of Allowed Claims or Interests may vote to accept or reject the Plan, provided, however, that (i) the holders of Claims or Interests in classes that are not conclusively impaired under the Plan are presumed to have accepted the Plan and solicitation of acceptances with respect to such classes is not required, and (ii) a class is deemed not to have accepted the Plan if the Plan provides that the Claims or Interests of such class do not entitle the holders of Claims or Interests to receive or retain any property under the Plan on account of such Claims or Interests. Accordingly, the Debtor is soliciting acceptance of the Plan only from holders of Claims or Interests in the following classes, which are "impaired" under the Plan and are entitled to accept or reject the Plan:

-3-

- **Class 1** – Allowed Secured of De Lage Landen Financial Services.
- **Class 2** – Allowed Secured of First Metro Bank.
- **Class 3** – Allowed Secured of CB&S Bank.
- **Class 4** - Allowed Unsecured Claims.
- **Class 5** – Equity Interest Holders.

Only Persons who hold Claims or Interests in the foregoing impaired classes are entitled to vote to accept or reject the Plan.

**THE DEBTOR BELIEVE THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF HOLDERS OF CLAIMS AND INTERESTS IN ALL IMPAIRED CLASSES. THE DEBTOR RECOMMEND THAT ALL PERSONS ENTITLED TO VOTE CAST A BALLOT TO ACCEPT THE PLAN.**

   b. <u>Deadline for Voting</u>. The Bankruptcy Court has fixed 5:00 p.m. (Central Time) on _____, as the deadline for voting. To be counted, all ballots must be completed and received, as set forth below, before the Voting Deadline.

   c. <u>Voting Procedures</u>. Holders of Claims in Classes 1, 2, 3, 4 and 5 should complete and sign the enclosed Ballot and deliver it by mail, hand or overnight delivery to:

Stuart M. Maples
Maples Law Firm, PC
200 Clinton Ave. W., Suite 200
Huntsville, Alabama 35801

  **TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED BY THE VOTING DEADLINE OF 5:00 P.M. CENTRAL TIME ON _____. You must ensure the receipt of the ballot before the Voting Deadline. Ballots received after the Voting Deadline will not be counted.**

   d. <u>Significance of Voting</u>. The vote for each holder of a claim in an impaired class is important. Acceptance by each impaired class of claims is a condition to confirmation of the Plan on a consensual basis. The Bankruptcy Code defines "acceptance" of a plan by a class of creditors as acceptance by holders of two-thirds in dollar amount and more than one-half in number of the claims of that class that actually cast ballots for acceptance or rejection of the Plan. If a class or classes of impaired Claims does not accept the Plan, the Debtor has required confirmation of the Plan under the "cram down" provisions of § 1129(b) of the Bankruptcy Code, which permits confirmation, notwithstanding non-acceptance by one or more impaired classes, if the Plan does not discriminate unfairly and is "fair and equitable" with respect to each non-accepting class. **THESE CALCULATIONS ARE BASED ONLY ON THE CLAIM AMOUNTS AND NUMBER OF**

-4-

Case 19-82417-CRJ11 Doc 98 Filed 02/21/20 Entered 02/21/20 12:11:00 Desc Main
Document Page 4 of 40

**CREDITORS WHO ACTUALLY VOTE. THE VOTE OF EACH CREDITOR IS IMPORTANT.**

The Debtor will prepare and file with the Court a certification of the results of the balloting with respect to the Plan. **ANY BALLOTS RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED, NOR WILL ANY BALLOTS RECEIVED BY FACSIMILE BE ACCEPTED.**

### 3. Confirmation Hearing.

Pursuant to § 1128 of the Bankruptcy Code, the Bankruptcy Court shall schedule a confirmation hearing to consider confirmation of the Plan.

At the Confirmation Hearing, the Court will (i) determine whether the requisite vote has been obtained for each Class, (ii) hear and determine objections, if any, to the Plan and to confirmation of the Plan that have not been previously disposed of, (iii) determine whether the Plan meets the confirmation requirements of the Bankruptcy Code, and (iv) determine whether to confirm the Plan.

Any objection to confirmation of the Plan must be in writing and filed and served as required by the Court pursuant to the Order Approving Disclosure Statement. **Specifically, all objections to the confirmation of the Plan must be served in a manner so as to be received on or before _____, at 5:00 p.m. (Central Time) by:**

> a.   <u>Clerk of the Court</u>, United States Bankruptcy Court, 400 Wells Street, P.O. Box 3045, Decatur, Alabama, 35602.

> b.   <u>Counsel to the Debtor</u>, Stuart M. Maples, Maples Law Firm, PC, 200 Clinton Ave. West, Suite 1000, Huntsville, Alabama, 35801; and

> c.   <u>Richard Blythe</u>, Office of the Bankruptcy Administrator, 400 Wells Street, P.O. Box 3045, Decatur, Alabama, 35602.

## II. BUSINESS AND HISTORY OF DEBTOR.

### A. Company Structure.

Debtor and H&B Properties, LLC were both formed in 2009. The sole Director of the Debtor is Harvey R. Robbins, III.

### B. History.

H&B Properties, LLC purchased land and equipment and Debtor purchased the business from Bullington Lumber Co, Inc. ("Bullington Lumber"), as well as the right to use the Bullington Lumber name. After Debtor purchased Bullington Lumber, its operations and services remained the same and Debtor added divisions such as cut up for pallet stock, repairing pallets for companies

and, for a period of time, built new pallets. Over the years and with the addition of treating capabilities, Debtor began servicing the portable barn business and the majority of Debtor's sales came from this service. Debtor had approximately four very large customers and a few smaller customers that conducted business with Debtor for many years. Profit and Loss Statements for 2016-2018 is attached as <u>Exhibit A</u>.

The understanding was Debtor was to pay back the money borrowed from First Metro Bank but was able to use the assets of H&B Properties, LLC as collateral to secure the note. In addition, Beverly Robbins ("Beverly") and Harvey F. Robbins III ("Mr. Robbins" and together "Principals of the Debtor") cosigned or guaranteed the note at First Metro Bank. Mr. Robbins believed in 2011, Robbins Forest Products, Inc. was formed and purchased the treating facility, land and equipment. Debtor was allowed to use this facility and there was not a note or mortgage on this facility. In 2013, Mr. Robbins believed H&B Properties, LLC purchased the treating facility from Robbins Forest Products. H&B Properties, LLC again allowed Debtor to use the assets as collateral for the mortgage which began as a line of credit ("LOC") and then turned into a mortgage. That mortgage is with CB&S Bank and is guaranteed by Mr. Robbins.

## C. Assets.

*See* Schedule A/B attached hereto as <u>Exhibit B.</u> The real estate and the majority of the equipment used in operations are leased to the Debtor by H&B Properties, LLC, a non-filing party. As the Debtor is moving from active operations to a passive operation, the Debtor has no inventory and limited accounts receivables. It is anticipated that the remaining accounts receivable would be sufficient to pay remaining post-petition payables.

## D. Debt Structure.

### 1. <u>Administrative Expense Claims</u>.

At Confirmation, the Debtor anticipates administrative expense claims allowable under the Plan by Maples Law Firm, P.C., in the approximate amount of $55,000.00.

The Debtor also anticipates paying Hall Tanner Hargett P.C., as special counsel, professional fees from profits from ongoing business. Employment of Hall Tanner Hargett P.C., as special counsel, is currently pending approval before the Court and is set for hearing February 24, 2020.

### 2. <u>Tax Claims</u>.

The Debtor currently owes the following taxes:

(i) <u>IRS</u>: The IRS asserts a Priority Claim for withholding taxes in the amount $4,212.94; and

(ii) <u>Alabama Department of Revenue</u>: The Alabama Department of Revenue ("ADOR") asserts Priority Claims for withholding tax in the amount of $24,980.42

All Tax Claims are Unclassified.

3.    **Allowed Secured Claims**.

The Debtor currently has three (3) secured lenders: De Lage Landen Financial Services, First Metro Bank and CB&S Bank.

The Plan places the Secured Claims in Class 1 – Class 3.

E.    **Summary of Unsecured Debt for Distribution Purposes Under the Plan**.

The Plan places all Unsecured Claims in Class 4. The total amount of these claims is approximately $575,643.54.

The Debtor reserves all rights, claims and defenses with respect to the allowance, amount and classification of all claims. Moreover, some of the claims are disputed or unliquidated. Additional claims may be unknown to the Debtor. The Debtor reserves all rights and makes no representation or warranty as to the number of Allowed Claims.

F.    **Potential Claims of Debtor.**

The Debtor is currently readying to pursue a claim against C&S Sales, LLC d/b/a Derksen Portable Buildings (the "Derksen Claim").

III.    **EVENTS LEADING TO CHAPTER 11.**

In May of 2018, Debtor was accused by their largest customer, C&S Sales, LLC d/b/a Derksen Portable Buildings ("Derksen"), and is the industry leader, of invoicing for lumber that Debtor never received. Even though Debtor provided a massive amount of evidence and proof that this was not the case, including a signed BOL by Derksen. This left Debtor holding invoices owed to Derksen for over $130k. Derksen slandered Debtor's name and rumors spread throughout the industry causing Debtor to lose its top four customers literally overnight. In the months following, Debtor lost a massive amount of money each month while trying to rebuild and keep cash flowing by selling all its inventory to try and appease vendors in order to try and continue doing business. This eventually played out and Debtor was not able to purchase any lumber forcing Debtor to start restructuring from a lumber sales company to a service company. Currently, Debtor is still trying to rebuild and is now only servicing other companies lumber. This is called treating service only "TSO" and manufacturing service only "MSO."

IV.    **CHAPTER 11 PROCEEDINGS.**

**Post-Filing Operations.** After filing this Chapter 11 case, the Debtor has operated its business and managed its assets and affairs as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. The Debtor will file monthly reports with the Bankruptcy Court summarizing its post-filing operating results.

-7-

## V.    SUMMARY OF PLAN.

NOTE: The following is a summary of the Plan.  Read the Plan itself for a full disclosure of its contents.  The following summary is provided for convenience only and is not intended as a complete statement of the terms of the Plan.  If the summary conflicts in any way with the Plan, the terms of the Plan shall control.  **REFERENCE TO THE PLAN IS NECESSARY FOR A FULL UNDERSTANDING OF ITS TERMS.**

A.    **Overview.**  The Plan provides for the payment of secured and unsecured debt.

B.    **Disclosure of Unclassified Claims.**

1.    **Administrative Expense Claims.**    This class shall consist of all administrative expense claims of the Debtor's Chapter 11 case as allowed pursuant to § 503(b) of the Code and given priority in accordance with § 507(a)(1) of the Code.  This class is divided into the following sub-classes:

(i)    Maples Law Firm, P.C.:  Debtor has incurred legal fees with the law firm of Maples Law Firm, P.C. relating to the firm's representation of the Debtor in Bankruptcy.  These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim which is unimpaired and shall be paid either upon the Effective Date of the Plan or in a manner agreed upon by the Debtor and Maples Law Firm.  The amount of professional compensation due at confirmation is estimated to be approximately $55,000.00.

(ii)    Hall Tanner Hargett, P.C.:  Employment of Hall Tanner Hargett P.C., as special counsel, is currently pending approval before the Court and is set for hearing February 24, 2020.  If approved, Hall Tanner Hargett, P.C. bills at an hourly rate according to their menu of services performed.  These legal fees shall constitute an Administrative Expense Claim which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

2.    **Tax Claims.**

(i)    The Allowed Tax Claim of the IRS.

(ii)    The Allowed Tax Claim of the Alabama Department of Revenue.

C.    **Disclosure of Unimpaired Classes.**

All classes of claims are impaired under the Plan.

-8-

D.      **Disclosure of Impaired Classes.**

**Class 1 – Allowed Secured of De Lage Landen Financial Services.**
Class 1 shall consist of the Allowed Secured Claim of De Lage Landen Financial Services ("De Lage").  A proof of claim has been filed for $28,424.16, accruing interest at 4.25%, per annum.

**Class 2 – Allowed Secured of First Metro Bank.**
Class 2 shall consist of the Allowed Secured Claim of First Metro Bank ("First Metro"). A proof of claim has been filed for $2,915,041.50, accruing interest at 5.00%, per annum.

**Class 3 – Allowed Secured of CB&S Bank.**
Class 3 shall consist of the Allowed Secured Claim of CB&S Bank ("CB&S").  A proof of claim has been filed for $1,165,786.91, accruing interest at 5.75%, per annum.

**Class 4 - Allowed Unsecured Claims.**
Class 4 shall consist of the Allowed Unsecured Claims of all other unsecured creditors.

**Class 5 – Equity Interest Holders.**
Class 5 shall consist of the equity position of Member Harvey F. Robbins, III in the Debtor.

VI.    **IMPAIRMENT AND TREATMENT OF CLASSES UNDER THE PLAN**

A.      **Treatment of Unclassified Claims.**  Treatment of all claims and interests shall be in accordance with the Plan.

1.      **UNCLASSIFIED CLAIMS.**

**Administrative Expense Claims:**  This class shall consist of all administrative expense claims of the Debtor' Chapter 11 case as allowed pursuant to § 503(b) of the Code and given priority in accordance with § 507(a)(1) of the Code.  This class is divided into the following sub-classes:

(i)      **Maples Law Firm, P.C.:**  Debtor has incurred legal fees with the law firm of Maples Law Firm, P.C. relating to the firm's representation of the Debtor in Bankruptcy.  These legal fees, if approved by the Court, shall constitute an Administrative Expense Claim which is unimpaired and shall be paid either upon the Effective Date of the Plan or in a manner agreed upon by the Debtor and Maples Law Firm. The amount of professional compensation due at confirmation is estimated to be approximately $55,000.00.

(ii)      **Hall Tanner Hargett, P.C.:**  Employment of Hall Tanner Hargett P.C., as special counsel, is currently pending approval before the Court and is set for hearing February 24, 2020.  If approved, Hall Tanner Hargett, P.C. bills at an hourly rate according to their menu of services performed.  These legal fees shall constitute an

Administrative Expense Claim which is unimpaired and shall be paid in full as of the Effective Date of the Plan.

**Tax Claims:**

(i)     <u>IRS</u>:  The IRS asserts a Priority Claim for withholding taxes in the amount $4,212.94; and

(ii)    <u>Alabama Department of Revenue</u>:  The Alabama Department of Revenue ("ADOR") asserts Priority Claims for withholding tax in the amount of $24,980.42

## 2.     <u>CLASSIFED CLAIMS.</u>

**Class 1 – Allowed Secured of De Lage Landen Financial Services.**
Class 1 shall consist of the Allowed Secured Claim of De Lage in the amount of $28,424.16.  The De Lage collateral has been surrendered, satisfying the secured claim of De Lage.  De Lage shall have 60 days from the Effective Date to file an unsecured deficiency claim.

**Class 2 – Allowed Secured of First Metro Bank.**
Class 2 shall consist of the Allowed Secured Claim of First Metro.  It is anticipated that First Metro will continue to be serviced by the lease, or paid off by the sale of its real estate collateral owned by H&B Properties, LLC, a related non-filing entity.

**Class 3 – Allowed Secured of CB&S Bank.**
Class 3 shall consist of the Allowed Secured Claim of CB&S.  It is anticipated that CB&S will continue to be serviced by the lease, or paid off by the sale of its real estate collateral owned by H&B Properties, LLC, a related non-filing entity.

**Class 4 - Allowed Unsecured Claims.**
Class 4 consists of the Allowed Unsecured Claims of all other unsecured creditors.  The Allowed Unsecured Claims of the unsecured creditors will be paid the net proceeds of the Derksen Claim.  This gross claim less Administrative Expenses and Tax Claims.

It is anticipated that the Derksen Claim may be worth $130,000.00-$300,000.00.

**Class 5 – Equity Interest Holders.**
Class5 shall consist of the equity position of Member Harvey F. Robbins, III in the Debtor. The Member, or his assigns, will receive no equity distribution (other than salary) unless and until Class 2 is paid in full.

## VII.     IMPLEMENTATION OF THE PLAN

### A.     Means of Executing the Plan.

1.     The Debtor proposes to implement the Plan as follows:

-10-

H&B Properties, LLC owns the property and equipment and has been and is currently paying both Class 2 and Class 3, which totals $30,422.52 monthly. The property and equipment are collateral for both notes. Debtor has not been paying the lease amount to H&B Properties, LLC which equals the banknote amounts and does not appear that it will be able to.

H&B Properties, LLC, which is funded by Mr. Robbins, cannot continue to pay the notes without being paid the lease amount each month. At that time H&B Properties, LLC will lease the property to a third parties in order to reduce the monthly deficit or eliminate it altogether. In addition, H&B Properties, LLC will assume both banknotes.

The treatment operations are to be leased to C&T Sales, LLC for $15,000.00 per month, subject to approval by this Court. The pallet operations will be leased to Pallet Repairs, LLC, (an entity owned by Mr. Robbins) for $5,000.00 per month. The yard or "white" operations are being negotiated to lease for approximately $8,500.00 per month to Lumber One.

The resulting leases will leave a shortfall to the secured lenders of $2,000.00 per month, which will be funded by Mr. Robbins.

Mr. Robbins has also agreed to fund the Derksen Claim, from which the net proceeds, (after repaying Mr. Robbins for fees expended would be used to pay unsecured creditors pro rata. It is anticipated that unsecured creditors would be returned from $100,000.00 to $250,000.00.

    **2.**    **Management.** The Debtor shall continue to manage its affairs through Harvey F. Robbins, III. Mr. Robbins receives no salary or other benefits, and would not receive salary or benefits under the Plan. In fact, Mr. Robbins has subsidized operations in the past and would continue to do so under the Plan.

    **3.**    **Creditors' Committee.** No creditors' committee was formed in this matter. Operating reports will continue and shall be available to the creditors until the Plan is substantially consummated and the case is closed.

    **4.**    **Disbursing Agent.** Harvey F. Robbins, III shall be the Disbursing Agent.

    **5.**    *De Minimis* **Distributions.** Notwithstanding anything to the contrary contained in the Plan, the Debtor shall not be required to transmit Cash to the holder of an Allowed Claim in an impaired class of claims if the amount of Cash otherwise due is less than $10.00. All Cash not so distributed shall be deposited into the Unpaid Claims Reserve, and such Cash shall become the sole and exclusive property of the Debtor.

**B.**    **Treatment of Executory Contracts and Unexpired Leases.**

The Debtor intends to reject all of the current leases of the tenants for its properties. Pursuant to § 1123(b)(2) of the Bankruptcy Code, except for those executory contracts and

unexpired leases, if any, assumed pursuant to the Plan or as to which the Debtor has filed prior to the Confirmation Date a motion to assume and assign or a motion to reject, all executory contracts and unexpired leases to which the Debtor is or was a party and not previously rejected or assumed and assigned pursuant to prior order of the Bankruptcy Court, including, without limitation, all executive and employee severance, vacation, benefit and retirement plans, contracts and agreements (including, but not limited to all stay or retention programs, incentive plans, accelerated vesting plans, accelerated benefit plans, and any other plan, agreement, contract or document relating to or providing for payments to executives or employees not part of recurring salaries and wages), are deemed rejected pursuant to § 364(a) of the Bankruptcy Code as of the Effective Date.

Each party to an executory contract or unexpired lease rejected pursuant to the Plan (and only such entities) asserting a claim for damages arising from such rejection shall file, not later than thirty (30) days following the Confirmation Date, a proof of such Claim; *provided, however,* that (1) the Bar Date established for rejection damages claims in this Section of the Plan shall not apply to Persons that may assert a Claim on account of an executory contract or unexpired lease that was rejected by the Debtor before Confirmation for which a prior Bar Date was established; and (2) any Person asserting a claim for rejection damages that does not timely file a proof of claim in accordance with the Plan shall be forever enjoined and barred from asserting such Claim against the Debtor, the Estate or any property of the Estate.

## C.    Provisions Governing Distributions.

### 1.    Procedure for Determination of Claims.

a.    Objections to Claims.    Notwithstanding the occurrence of the Confirmation Date, and except as to any Claim that has been Allowed prior to such date or pursuant to this Plan, the Debtor, or any other Person authorized under § 502(a) of the Bankruptcy Code, may object to the allowance of any Claim against the Debtor or seek estimation thereof on any grounds permitted by the Bankruptcy Code; provided, however, that after the Effective Date the Bankruptcy Court shall have exclusive authority and responsibility to prosecute objections to Claims.

b.    Disputed Claims.    Payments or Distributions under the Plan on account of disputed claims shall be held in reserve pending the allowance or disallowance of the Claim.  To the extent any property is distributed to an entity on account of a Claim that is not an Allowed Claim, such property shall promptly be returned to the Disbursing Agent for deposit in the Unpaid Claims Reserve. To the extent that a disputed claim ultimately becomes an Allowed Claim, payments and distributions on account of such Allowed Claim shall be made in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Code allowing such Claim becomes a Final Order, any property held in reserve as pursuant to the Plan that would have been distributed prior to the date on which a disputed claim becomes an Allowed Claim shall be distributed, together with any dividends, payments or other distributions made on

account of such property from the date such distributions would have been due had such Claim then been an Allowed Claim to the date such distributions are made.

**D.    Distributions.**

   **1.    Undeliverable Distributions.**    Except as otherwise provided herein, distributions to holders of Allowed Claims shall be made: (a) at the addresses set forth on the respective proofs of Claim filed by such holders; (b) at the addresses set forth in any written notice of address change delivered to the Debtor after the date of the filing of any related proof of Claim; or (c) at the address reflected in the Schedules or the Debtor's records if no proof of Claim has been filed and if the Debtor has not received written notice of a change of address, as set forth herein.  If a distribution is returned as undeliverable, the maker of such distribution shall hold such distribution and shall not be required to take any further action with respect to the delivery of the distribution unless and until the earlier of (1) the date on which Debtor is notified in writing of the then current address of the holder entitled to receive the distribution or (2) within six (6) months from the first payment due on the Unsecured Claims, except as the Bankruptcy Court may otherwise order.  If the Disbursing Agent is notified in writing of the then current address of the holder before the expiration of the six (6) month period, the Disbursing Agent shall promptly make the distribution required by the Plan to the holder at the then current address.  If the Disbursing Agent is not so notified by the end of the six (6) month period, and the holder of the Claim does not by such date assert a right to such undeliverable distribution, the holder shall be forever barred from asserting a Claim to such undeliverable distribution, which shall become available for distribution to holders of other Allowed Claims as provided in the Plan.

   **2.    Manner of Payment.**    Distributions by the Disbursing Agent may be made, at the option of the Disbursing Agent, in cash, by wire transfer, or by check drawn on such accounts established by the Disbursing Agent as necessary to effectuate the Plan.

   **3.    Interest.**    Unless otherwise required by Final Order of the Bankruptcy Court or applicable bankruptcy law, interest shall not accrue or be paid after the Filing Date on any Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Filing Date on any Claim.

   **4.    Fractional Dollars; *De Minimis* Distributions.**

      a.    Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent.

      b.    No interim distribution will be made on account of any Allowed Class 2 Claim to the holder of any such Allowed Class 2 Claim if the amount of such distribution for the Allowed Claim is less than $10.00.  Immediately before the last distribution date on Unsecured Claims, the Disbursing Agent shall (i) aggregate the amount of all distributions that would have been made on account of

-13-

an Allowed Claim but for this *de minimis* provision and (ii) on the last distribution date, make a distribution on account of such Allowed Claim in accordance with the Plan.

5.      **Distributions on Claims Allowed Pursuant to Section 502(h) of the Bankruptcy Code.**  Except as otherwise provided in the Plan, no distributions shall be made on account of a Claim arising as a result of a Final Order entered in an avoidance action until such Claim becomes an Allowed Claim.  Any Claim that is allowed pursuant to § 502(h) of the Bankruptcy Code prior to the first distribution date as a result of the entry of a Final Order in any avoidance action will be treated in accordance with the provisions of the Plan.  All holders of such Claims that become Allowed Claims after the first distribution date will receive an initial distribution on the distribution date next following the date on which their Claim becomes an Allowed Claim and shall receive subsequent distributions, if any, in accordance with the provisions of the Plan.  Distributions under the Plan on account of anticipated Claims that may arise or become allowable as a result of the entry of a Final Order in any avoidance action that are not Allowed Claims as of the first distribution date may be held in reserve, at the discretion of the Disbursing Agent, pending the allowance of disallowance of such Claims.

6.      **Disbursing Agent's Compliance with Tax Requirements.**  In compliance with § 346 of the Bankruptcy Code, to the extent applicable, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state or local taxing authorities in connection with making distributions pursuant to the Plan.  The Disbursing Agent shall be authorized to take any and all action necessary and appropriate to comply with such requirements.  As a condition to making any distribution under the Plan, the Disbursing Agent may require the holder of an Allowed Claim to provide such holder's taxpayer identification number, and such other information, certification or forms as necessary to comply with applicable tax reporting and withholding laws.  Notwithstanding any other provision of this Plan, each entity receiving a distribution of dash pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of any such distribution.

7.      **Reserve for Disputed Claims.**  Except as otherwise provided in the Plan, no distributions shall be made on account of a disputed claim until such claim becomes an Allowed Claim.  In making any distribution on Allowed Claims, the Disbursing Agent shall calculate the amount of such distribution (for purposes of making a Pro Rata calculation) as if each disputed claim were an Allowed Claim, unless the Bankruptcy Court enters an order specifying that the disputed claim should be treated as being a different amount for purposes of such calculation.  The Disbursing Agent shall reserve from distributions a sufficient amount to make a distribution on a disputed claim in the event it becomes an Allowed Claim (unless the Bankruptcy Court orders otherwise).  To the extent a disputed claim is allowed pursuant to a Final Order, any reserves attributable to the disallowed portion of the disputed claim shall be distributed on account of Allowed Claims pursuant to the terms of the Plan.

**8.** **Setoffs.** Subject to § 553 of the Bankruptcy Code, in the event the Debtor has a claim of any nature whatsoever against a holder of a Claim, the Disbursing Agent may, but is not required to, set off the Debtor's claim against such Claim (and any distributions or other rights to receive property arising out of such Claim under the Plan) unless any such claim of the Debtor is or will be released under the Plan. Neither the failure to set off nor the allowance of any Claim under the Plan shall constitute a waiver or release of any claim of the Debtor.

**9.** **Reliance on Claims Register.** In making distributions under the Plan, the Disbursing Agent may rely upon the accuracy of the claims register maintained by the Bankruptcy Court or its designee as claims agent in the case, as modified by any Final Order of the Bankruptcy Court disallowing Claims in whole or in part.

### E. Reservation of the Rights of the Estate.

All claims, rights to payment, causes of action, cross-claims and counterclaims of the Debtor of any kind or nature whatsoever including, without limitation, causes of action and avoidance actions, against third parties arising before the Confirmation Date that have not been disposed of prior to the Effective Date shall be preserved and treated in accordance with the Plan. Without limitation of the foregoing, pursuant to § 1123(b) of the Bankruptcy Code, the Debtor shall enforce, for the benefit of the holders of Allowed Class 2 Claims (a) the causes of action and avoidance actions; (b) all Claims, causes of action, and related recoveries against any person; and (c) all other claims, rights to payment and causes of action, cross claims and counterclaims of any nature or type whatsoever, at law or in equity, against any person.

## VIII. TAX CONSEQUENCES OF PLAN.

The following summary discusses the material federal income tax consequences expected to result from the consummation of the Plan. This discussion is based on current provisions of the Internal Revenue Code of 1986, as amended (the "Tax Code'), applicable Treasury Regulations, judicial authority and current administrative rulings and pronouncements of the Internal Revenue Service (the "IRS"). There can be no assurance that the IRS will not take a contrary view, and no ruling from the IRS has been or will be sought by the Debtor or his advisors. Legislative, judicial or administrative changes or interpretations may be forthcoming that could alter or modify the statements and conclusions set forth herein. Any such changes or interpretations may or may not be retroactive and could affect the tax consequences to, among others, the Debtor and the holders of Claims.

The following summary is for general information only. The federal income tax consequences of the Plan are complex and subject to significant uncertainties. This summary does not address foreign, state or local tax consequences of the Plan, nor does it purport to address all of the federal income tax consequences of the Plan. This summary does not purport to address the federal income tax consequences of the Plan to taxpayers subject to special treatment under the federal income tax laws, such as broker-dealers, tax-exempt entities, financial institutions, insurance companies, S corporations, small business investment companies, mutual funds, regulated investment companies, foreign corporations, and non-resident alien individuals. EACH

HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE POTENTIAL FEDERAL, STATE, LOCAL OR FOREIGN TAX CONSEQUENCES OF THE PLAN.

**A.      Federal Income Tax Consequences to the Debtor.**

NOTHING STATED IN THE DISCUSSION WHICH FOLLOWS IS OR SHOULD BE CONSTRUED AS TAX ADVICE TO ANY CREDITOR OF THE DEBTOR. CREDITORS SHOULD CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES OF THE PLAN.

The statements contained in this portion of the Disclosure Statement are based on existing provisions of the Internal Revenue Code of 1986, as amended ("Code"), Treasury Regulations promulgated thereunder, existing court decisions, published Revenue Rulings, Revenue Procedures and Technical Information Releases of the Internal Revenue Service ("IRS"), and legislative history. Any changes in existing law may be retroactive, may affect transactions commenced or completed prior to the effective date of the changes, and may significantly modify this discussion.

Legislation may be introduced in future sessions of Congress which could eliminate or alter some of the anticipated tax results of the Plan. No attempt has been made to evaluate in any detail the impact, which may be substantial, of any proposed legislation on the Plan.

The following is intended to be only a summary of certain tax considerations under current law which may be relevant to the creditors of the Debtor. It is impractical to set forth in this Disclosure Statement all aspects of federal, state, and local tax law which may have tax consequences to the Debtor and his creditors.

Some of the tax aspects discussed herein are complex and uncertain. Moreover, the discussion below is necessarily general, and the full tax impact of the Plan upon the creditors will vary depending upon each creditor's individual circumstances. Therefore, all the creditors should satisfy themselves as to the federal, state and local tax consequences of the Plan by obtaining advice solely from their own advisors.

THE CREDITORS SHOULD NOT CONSIDER THE DISCUSSION WHICH FOLLOWS TO BE A SUBSTITUTE FOR CAREFUL, INDIVIDUAL TAX PLANNING AND ARE EXPRESSLY CAUTIONED THAT THE INCOME TAX CONSEQUENCES TO THE CREDITORS ARE COMPLEX AND VARY CONSIDERABLY DEPENDING UPON EACH PARTY'S CIRCUMSTANCES. ACCORDINGLY, CREDITORS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS WITH REGARD TO THEIR PARTICULAR TAX SITUATIONS.

1.      **The Plan.** The terms of the Plan provide for payment provisions which should be analyzed individually for each Creditor with its tax advisor.

2.    **Creditors.**

a.    To the extent that Creditors receive payments under the Plan as interest, such Creditors will recognize interest income under § 51(a)(4) of the Code.

b.    To the extent that, pursuant to the Plan, creditors receive cash payments from the Debtor in satisfaction of their claims, such creditors may recognize gain or loss, as the case may be, equal to the difference between the amount of the cash so received and their adjusted basis in such claim.

c.    The gain or loss to be recognized by such creditors will be either ordinary income or capital gain depending on, among other factors, the status of the creditor and the nature of Claim in the hands of the creditor. While capital gains and ordinary income are presently taxed at the same rates, §§ 1211 and 1212 of the Code limit the ability to offset net capital losses against ordinary income.

3.    **Bad Debt Deduction.** Section 166 of the Code permits the deduction of debts which have become totally or partially worthless. Therefore, to the extent that certain creditors will receive less than full payment from the Debtor with respect to the debt owed such creditors, such creditors may be able to deduct such bad debts for federal income tax purposes. The nature of the deduction for a bad debt depends on its classification as either a business or non-business debt. For non-corporate taxpayers, non-business bad debts are deductible as short-term capital losses, and so are subject to the limitations on deductibility of capital losses under §§ 1211 and 1212 of the Code. Business bad debts and bad debts held by corporate taxpayers are deductible as ordinary losses. A bad debt is deductible to a creditor at the time it becomes wholly or partially worthless determined under the particular facts and circumstances.

4.    **Income from the Discharge of Indebtedness.** As a general rule, § 61(a)(12) of the Code, requires that gross income for federal income tax purposes include income from the discharge of indebtedness. However, § 108(a)(1) of the Code, specifically excludes discharge of indebtedness income from gross income if the discharge occurs in a Title 11 (bankruptcy) case. Therefore, the Debtor will not recognize income on the discharge of indebtedness pursuant to the Plan.

Section 108(b) of the Code does, however, provide that the amount excluded from gross income under § 108(a)(1) must be applied to reduce, in order, the following tax attributes of the Debtor: (a) net operating losses and net operating loss carryovers; (b) general business credits; (c) capital loss carryovers; (d) the basis of the property of the taxpayer (but not below the aggregate liabilities of the taxpayer after the discharge, pursuant to § 1017(b)(2) of the Code); and (e) foreign tax credit carryovers.

Alternatively, the Debtor may elect, under § 108(b)(5) of the Code, to apply any portion of the reduction referred to above to a reduction of the taxpayer's basis in depreciable property and real estate held for sale in the ordinary course of business.

-17-

The effect of the reduction of tax attributes is to defer the recognition of income on the discharge of indebtedness income until such time as the reduced tax attribute would have otherwise been available to the Debtor to decrease taxable income.

     **5.**    **State and Local Taxes.** In addition to the federal income tax consequences described above, Creditors should consider potential state and local tax consequences which are not discussed herein. In general, the State of Alabama imposes a tax against income of residents and non-residents of Alabama who have income from sources within the state of Alabama. The Alabama income tax is imposed on taxable income at a graduated rate of up to five percent (5%).

     THE FOREGOING ANALYSIS IS NOT INTENDED TO BE A SUBSTITUTE FOR CAREFUL TAX PLANNING, PARTICULARLY SINCE CERTAIN OF THE INCOME TAX CONSEQUENCES OF THE PLAN WILL NOT BE THE SAME FOR ALL CREDITORS, DUE TO THEIR RESPECTIVE DIFFERING SOURCES AND TYPES OF INCOME AND DEDUCTIONS, AND OTHER FACTORS. ACCORDINGLY, CREDITORS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS WITH REFERENCE TO THEIR OWN TAX SITUATION.

## IX.   PLAN CONFIRMATION PROCESS.

### A.    Confirmation.

     At the Confirmation Hearing, the Bankruptcy Court shall confirm the Plan if the Plan satisfies all requirements of § 1129(a) include the following: (1) the Plan must be accepted by all impaired classes, (2) the Plan must be feasible, and (3) with respect to each holder of a Claim or Interest that does not vote to accept the Plan (even if such holder is a member of a Class that as a whole votes to accept the Plan), the Plan must be in the "best interests" of such holder in that the Plan provides for a distribution to the holder that is not less than the amount such holder would receive in a hypothetical Chapter 7 liquidation of the Debtor. With respect to the requirement that each impaired class votes to accept the Plan, § 1129(b) provides that if all other requirements of § 1129(a) are satisfied, the Plan still may be confirmed if the Plan, with respect to each impaired class that does not accept the Plan, "does not discriminate unfairly" and is "fair and equitable" with respect to such class. The acceptance, feasibility, unfair discrimination and fair and equitable concepts are discussed in more detail below.

### B.    Acceptance of Plan by Voting.

     For the Plan to be accepted by an impaired class of claims, it must be accepted by holders of Claims in such Class that hold at least two-thirds in dollar amount and one-half in number of the Claims in such Class held by creditors that actually vote. A Class is impaired if the legal, equitable, or contractual rights of the members of such class are modified or altered by the Plan (with an exception, not applicable to the Plan, for curing defaults, reinstating maturity and compensating certain damages). Classes 1, 2, 3, 4 and 5 in this Plan are impaired and entitled to vote.

Case 19-82417-CRJ11   Doc 98   Filed 02/21/20   Entered 02/21/20 12:11:00   Desc Main
Document    Page 18 of 40

If any impaired Class does not accept the Plan, and at least one impaired Class accepts the Plan, the Debtor may seek confirmation of the Plan under the "cram down" provisions of § 1129(b) of the Bankruptcy Code. To obtain confirmation despite non-acceptance by one or more impaired Classes, the Debtor must show to the Bankruptcy Court that the Plan does not discriminate unfairly and is fair and equitable with respect to each such Class. Each of these requirements is discussed further, as follows:

       **1.**    **<u>Unfair Discrimination</u>.** A plan does not discriminate unfairly with respect to a non-accepting Class if it protects the rights of such Class in a manner consistent with the treatment of other Classes with similar rights. The unfair discrimination test does not require that similarly situated Classes be treated in exactly the same way. The test requires that such Classes be treated substantially similarly *or* if not treated substantially similarly, that differences in treatment be fair.

       **2.**    **<u>Fair and Equitable</u>.** A plan does not discriminate unfairly if either (a) each holder of a Claim or Interest in the non-accepting Class receives or retains under the Plan property of a value equal to the Allowed amount of such Claim or Interest; or (b) the holders of Claims or Interests that are junior to such Class receive or retain nothing under the Plan on account of such Claims or Interests (the "Absolute Priority Rule").

**C.**    **Feasibility.**

As a condition to confirmation of the Plan, § 1129(a) of the Bankruptcy Code requires that Confirmation is not likely to be followed by the liquidation of the Debtor (except as provided in the Plan) or the need for further financial reorganization. The Plan provides for reorganization of the Debtor's assets. The Debtor is not likely to need further financial reorganization. Accordingly, the Plan is feasible and the Debtor can demonstrate that the Plan is not likely to be followed by the liquidation of the Debtor (except as provided in the Plan) or the need for further financial reorganization of the Debtor.

**D.**    **Best Interests of Creditors Test.**

Confirmation requires that each holder of an Allowed Claim and Interest that is included in an Impaired Class (a) accept the Plan or (b) receive or retain under the Plan, property of a value, as of the Effective Date of the Plan, that is not less than the value such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. This requirement applies to all dissenting or non-voting members of impaired Classes, even with respect to a Class that has accepted the Plan.

To determine what holders of Claims and Interests would receive in a hypothetical Chapter 7 liquidation, the Bankruptcy Court will consider the dollar amount that would be generated in a straight liquidation of the Debtor's assets and properties. Such amount would be reduced by the costs and expenses of liquidation by additional administrative expense claims that would accrue in Chapter 7. Chapter 7 costs and expenses would include, without limitation, (a) statutory fees payable to the Chapter 7 trustee pursuant to § 326 of the Bankruptcy Code; (b) fees payable to attorneys, accountants, auctioneers, liquidators and other professional advisors that the Chapter 7

Trustee would engage to assist in discharging his duties under the Bankruptcy Code; and (c) any unpaid expenses incurred by the Debtor during the case, such as unpaid vendor invoices and fees and reimbursement of expenses of attorneys, accountants and other professional advisors retained by the Debtor or statutory committees or any party asserting a substantial contribution claim under § 503(b)(3) of the Bankruptcy Code.

Based on the foregoing, holders of Allowed Claims and Interests in Classes 1-3 would not receive full distribution in Chapter 7, and Class 4 would likely receive no distributions. The Plan also provides for payment of priority and administrative claims that would be payable from the proceeds of causes of action before any distribution to Unsecured Claims. The Plan, therefore, provides for distributions not less than the value that such holders would receive in Chapter 7.

Accordingly, the Plan meets the best interests of creditors test with respect to all holders of Claims and Interests. The Debtor believes the Plan will maximize the potential return to all parties in interest.

There are no known avoidance actions, but the Derksen Claim is being pursued.

Based on the foregoing, the Debtor has concluded that reorganization under the Plan will result in a greater distribution to holders of all classes than liquidation through Chapter 7.

## X.      ALTERNATIVES TO PLAN.

As an alternative to confirming the Plan, the Bankruptcy Court could convert the case to a case under Chapter 7 of the Bankruptcy Code, dismiss the case, or consider another Chapter 11 plan.

### A.      Liquidation under Chapter 7.

If the Plan is not confirmed, and no other alternative plan is proposed, the Bankruptcy Court could find cause to convert the case to a case under Chapter 7 of the Bankruptcy Code. In Chapter 7, a trustee would be elected or appointed to liquidate the assets of the Debtor for distribution to the Debtor's creditors in accordance with the priorities established by the Bankruptcy Code.

The Debtor believes that conversion of the case to a case under Chapter 7 of the Bankruptcy Code would result in lower distributions to all Creditors. Substantially all assets of the Debtor, with the exception of the avoidance actions, are subject to liens of the holder of the Secured Claim (the "Secured Party"). In a Chapter 7 case, the Secured Party likely would be able to obtain relief from automatic stay under § 362(d) to foreclose on its liens. All of the limited assets of the Debtor are pledged to the secured loans. It is likely that a conversion of the Debtor would prohibit H&B Properties, LLC from generating income from the facility. This would result in foreclosure by the secured creditors and a large deficiency would be added to the unsecured class. There would be no funds to support the Derksen litigation, so it is anticipated that would result in a zero recovery. There would be no funds for a Trustee to pursue avoidance actions. In this event, essentially no

assets, other than avoidance actions, would remain to satisfy the claims of creditors other than the Secured Party. In sum, a Chapter 7 would likely result in no recovery for unsecured creditors.

As disclosed on the Debtor's Summary of Assets and Liabilities, a copy of which is attached hereto as Exhibit C, the total assets of the Debtor are $236,441.50 and the total liabilities are $7,641,392.91.

Conversion to Chapter 7 would result in a No Asset Case.

Based on the foregoing, the Debtor believe that holders of Claims and Interests would receive a lower distribution on account of such Claims and Interests if the case were converted to Chapter 7.

### B. Comparison of Plan.

The Debtor is of the opinion that the proposed Plan provides more for each class of creditors and represents the statutorily mandated payment of priority claims.

### C. Dismissal of Case.

Dismissal of the case likely would have a disastrous result on the value of the Debtor's assets and the return to holders of Claims and Interests. Without limitation, dismissal of the case would terminate the automatic stay and allow the Secured Creditor to immediately foreclose its liens on substantially all of the Debtor's assets. Moreover, dismissal of the case would leave the Debtor without sufficient funding to preserve assets pending their liquidation. Dismissal also would terminate all means for the repayment of Unsecured Creditors under the Plan. In summary, dismissal of the Case would drastically reduce the value of the Debtor's assets, would lower the return to the Secured Creditor, and essentially would eliminate any return to holders of other Claims and Interests. The Debtor believes that dismissal of the case is not a viable alternative to the Plan.

### D. Alternative Chapter 11 Plan.

If the Plan is not confirmed, the Debtor and other parties in interest, including, without limitation, holders of Claims and Interests and any official statutory committee, could propose an alternative plan. The Debtor believes, however, that the Plan will provide the greatest and most expeditious return to holders of Claims and Interests. Because the Claim of the Secured Party exceed the expected liquidation value of the Debtor's assets, an alternative plan would not likely provide for any distributions to parties other than the Secured Party. The formulation, negotiation, and confirmation of an alternative plan also would delay significantly the administration of the Debtor's case and would have a negative impact on the Debtor's ability to reorganize. Under the circumstances, the Debtor submits that confirmation of an alternative plan is unlikely on terms and conditions as favorable to holders of Claims and Interests as those in the Plan.

## XI.     CONCLUSION/RECOMMENDATION.

Based on the foregoing, the Debtor believes that the Plan is the best alternative to maximize the value of the Debtor's assets and to maximize the return to creditors and equity security holders. The Debtor believes confirmation of the Plan is in the best interests of all parties in interest in the case.

The Debtor recommends that all parties entitled to cast ballots vote to ACCEPT the Plan.

Respectfully submitted February 21, 2020.

Debtor and Debtor-in-possession

H&B HOLDINGS, INC.

*/s/ Harvey F. Robbins, III*
HARVEY F. ROBBINS, III, PRESIDENT

*/s/ Stuart M. Maples*
STUART M. MAPLES
COUNSEL FOR DEBTOR

MAPLES LAW FIRM, PC
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@mapleslawfirmpc.com

## CERTIFICATE OF SERVICE

I do hereby certify that on February 21, 2020, a copy of the foregoing document was served on the following by Electronic Case Filing a copy of the same.

Richard Blythe
Bankruptcy Administrator
P.O. Box 3045
Decatur, AL  35602

All parties requesting notice

I do hereby certify that on February 21, 2020, a copy of the foregoing document was served on the following by mailing a copy of the same United States Mail, properly addressed and first-class postage prepaid.

All parties on the matrix attached hereto

*/s/ Stuart M. Maples*
STUART M. MAPLES

# Exhibit A

## 2016 – 2018
## Profit & Loss Statements

# H & B HOLDINGS, INC.
## Income Statement

|  | 12 Months Ended December 31, 2016 |
|---|---|
| **Sales** | |
| INCOME | $ 14,699,685.64 |
| INCOME DEPOT | 453,109.53 |
| OTHER INCOME | 332,355.00 |
| **Total Sales** | 15,485,150.17 |
| **Cost of Goods Sold** | |
| PURCHASES | 13,197,741.69 |
| LABOR | 214,361.02 |
| **Total Cost of Goods Sold** | 13,412,102.71 |
| **Gross Profit** | 2,073,047.46 |
| **Operating Expenses** | |
| OFFICERS SALARIES | 104,000.00 |
| SALARIES | 367,750.66 |
| TRUCK DRIVERS | 86,786.41 |
| ADVERTISING | 3,889.65 |
| AUTO EXPENSE | 27,224.83 |
| GAS & OIL | 118,689.78 |
| BANK CHARGES | 21,540.87 |
| EQUIPMENT RENTAL | 58,963.70 |
| DEPRECIATION EXPENSE | 194,232.82 |
| AMORTIZATION EXPENSE | 41,295.52 |
| GIFTS & FLORALS | 7,001.23 |
| DUES & SUBSCRIPTIONS | 4,973.60 |
| INSURANCE | 144,939.64 |
| INTEREST EXPENSE | 223,917.95 |
| LEGAL & ACCOUNTING | 37,155.00 |
| OFFICE SUPPLIES | 44,723.04 |
| RENT EXPENSE | 63,839.69 |
| REPAIRS & MAINTENANCE | 193,434.17 |
| SUPPLIES | 91,172.03 |
| TAXES & LICENSES | 11,841.05 |
| PAYROLL TAXES | 67,373.70 |
| TELEPHONE | 6,831.36 |
| TRAVEL | 15,890.99 |
| MEALS & ENTERTAINMENT | 1,682.67 |
| UTILITIES | 120,314.08 |
| WASTE DISPOSAL | 10,621.83 |
| **Total Operating Expenses** | 2,070,086.27 |
| **Operating Income (Loss)** | 2,961.19 |
| **Other Income (Expenses)** | |
| **Total Other Income (Expenses)** | 0.00 |
| **Net Income (Loss) Before Taxes** | 2,961.19 |
| **Net Income (Loss)** | $ 2,961.19 |

Case 19-82417-CRJ11   Doc 98   Filed 02/21/20   Entered 02/21/20 12:11:00   Desc Main
Document    Page 25 of 40

# H & B HOLDINGS, INC.
## Income Statement

| | 12 Months Ended<br>December 31, 2018 | 12 Months Ended<br>December 31, 2017 |
|---|---|---|
| **Sales** | | |
| INCOME | $ 5,397,924.58 | $ 6,742,780.01 |
| INCOME DEPOT | 0.00 | 588,296.52 |
| OTHER INCOME | 0.00 | 354,876.08 |
| INCOME- PALLET SALES | 0.00 | 2,019,643.02 |
| Total Sales | 5,397,924.58 | 9,705,595.63 |
| **Cost of Goods Sold** | | |
| PURCHASES | 5,032,835.36 | 6,832,318.79 |
| PURCHASES- TREATING | 2,025.00 | 273,852.96 |
| FREIGHT | 675.00 | 87,158.55 |
| LABOR | 0.00 | 566,093.10 |
| Total Cost of Goods Sold | 5,035,535.36 | 7,759,423.40 |
| Gross Profit | 362,389.22 | 1,946,172.23 |
| **Operating Expenses** | | |
| OFFICERS SALARIES | 0.00 | 104,000.00 |
| SALARIES | 631,194.45 | 441,364.08 |
| TRUCK DRIVERS | 0.00 | 114,954.29 |
| ADVERTISING | 0.00 | 4,375.27 |
| AUTO EXPENSE | 0.00 | 33,262.05 |
| GAS & OIL | 18,204.40 | 151,558.41 |
| BANK CHARGES | 0.00 | 29,339.60 |
| EQUIPMENT RENTAL | 0.00 | 139,848.62 |
| DEPRECIATION EXPENSE | 93,391.41 | 187,964.20 |
| AMORTIZATION EXPENSE | 42,746.97 | 42,746.97 |
| DUES & SUBSCRIPTIONS | 5,739.39 | 5,890.54 |
| INSURANCE | 72,044.61 | 128,524.68 |
| INTEREST EXPENSE | 235,734.61 | 203,022.56 |
| LEGAL & ACCOUNTING | 29,662.67 | 32,334.96 |
| MISCELLANEOUS EXPENSE | 0.00 | 7,340.04 |
| OFFICE SUPPLIES | 23,442.21 | 26,650.35 |
| RENT EXPENSE | 53,566.23 | 0.00 |
| REPAIRS & MAINTENANCE | 48,001.20 | 106,727.27 |
| SUPPLIES | 31,784.60 | 62,677.89 |
| TAXES & LICENSES | 1,551.72 | 7,658.70 |
| PAYROLL TAXES | 50,807.72 | 51,267.60 |
| TELEPHONE | 5,200.27 | 3,883.09 |
| TRAVEL | 5,023.33 | 7,575.76 |
| MEALS & ENTERTAINMENT | 104.70 | 1,412.84 |
| UTILITIES | 86,576.90 | 82,341.05 |
| WASTE DISPOSAL | 35,250.00 | 9,707.79 |
| Total Operating Expenses | 1,470,027.39 | 1,986,428.61 |
| Operating Income (Loss) | (1,107,638.17) | (40,256.38) |
| **Other Income (Expenses)** | | |
| Total Other Income (Expenses) | 0.00 | 0.00 |
| Net Income (Loss) Before Taxes | (1,107,638.17) | (40,256.38) |
| Net Income (Loss) | $ (1,107,638.17) | $ (40,256.38) |

Case 19-82417-CRJ11    Doc 98    Filed 02/21/20    Entered 02/21/20 12:11:00    Desc Main
Document      Page 26 of 40

# H & B HOLDINGS, INC.
## Income Statement

|  | 12 Months Ended<br>December 31, 2018 | 12 Months Ended<br>December 31, 2017 |
|---|---|---|

Case 19-82417-CRJ11   Doc 98   Filed 02/21/20   Entered 02/21/20 12:11:00   Desc Main
Document   Page 27 of 40

# Exhibit B

## Amended Schedule A/B

**Fill in this information to identify the case:**

Debtor name **H&B Holdings, Inc.**

United States Bankruptcy Court for the: NORTHERN DISTRICT OF ALABAMA

Case number (if known) **19-82417**

■ Check if this is an amended filing

# Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property

12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

**1. Does the debtor have any cash or cash equivalents?**

☐ No.  Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

**3.** **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | **First Metro Bank** | **Checking** | 9496 | $20.00 |
| 3.2. | **First Metro Bank** | **Checking** | 3459 | $20.00 |

**4.** **Other cash equivalents** *(Identify all)*

**5.** **Total of Part 1.**

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| | $40.00 |
|---|---|

| Part 2: | Deposits and Prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

■ No.  Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

**10. Does the debtor have any accounts receivable?**

☐ No.  Go to Part 4.
■ Yes Fill in the information below.

**11.** **Accounts receivable**

Debtor    **H&B Holdings, Inc.**        Case number *(If known)* **19-82417**
Name

| 11a. 90 days old or less: | 57,008.49 | - | 0.00 | = .... | $57,008.49 |
|---|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | | |

| 11b. Over 90 days old: | 164,393.01 | - | 0.00 | = .... | $164,393.01 |
|---|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | | |

**12.**    **Total of Part 3.**

Current value on lines 11a + 11b = line 12.  Copy the total to line 82.      **$221,401.50**

| Part 4: | **Investments** |
|---|---|

**13. Does the debtor own any investments?**

■ No.  Go to Part 5.
☐ Yes Fill in the information below.

| Part 5: | **Inventory, excluding agriculture assets** |
|---|---|

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☐ No.  Go to Part 6.
■ Yes Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **19.**   **Raw materials** **Chemicals for lumber treatment** | **3/1/19** | **$20,000.00** | **Recent cost** | **$10,000.00** |

**20.**    **Work in progress**

**21.**    **Finished goods, including goods held for resale**

**22.**    **Other inventory or supplies**

**23.**    **Total of Part 5.**

Add lines 19 through 22.  Copy the total to line 84.      **$10,000.00**

**24.**    **Is any of the property listed in Part 5 perishable?**
■ No
☐ Yes

**25.**    **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**
■ No
☐ Yes. Book value _____ Valuation method _____ Current Value _____

**26.**    **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
■ No
☐ Yes

| Part 6: | **Farming and fishing-related assets (other than titled motor vehicles and land)** |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No.  Go to Part 7.
☐ Yes Fill in the information below.

Debtor  **H&B Holdings, Inc.**
Name

Case number *(If known)* **19-82417**

---

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
| --- | --- |

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No.  Go to Part 8.
■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
| --- | --- | --- | --- |
| 39. **Office furniture** Desks, furniture | **$2,000.00** | Comparable sale | **$2,000.00** |
| 40. **Office fixtures** | | | |
| 41. **Office equipment, including all computer equipment and communication systems equipment and software** Computers & software | **$3,000.00** | Comparable sale | **$3,000.00** |
| 42. **Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |

43. **Total of Part 7.**
Add lines 39 through 42.  Copy the total to line 86.

| | **$5,000.00** |
| --- | --- |

44. **Is a depreciation schedule available for any of the property listed in Part 7?**
■ No
☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
■ No
☐ Yes

---

| Part 8: | Machinery, equipment, and vehicles |
| --- | --- |

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No.  Go to Part 9.
■ Yes Fill in the information below.

| General description Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
| --- | --- | --- | --- |
| 47. **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 48. **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 49. **Aircraft and accessories** | | | |
| 50. **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** Saws, pumps, small tools | Unknown | Comparable sale | Unknown |

---

Debtor    **H&B Holdings, Inc.**        Case number *(If known)* **19-82417**
Name

| | | |
|---|---|---|
| 51. | **Total of Part 8.** | $0.00 |
| | Add lines 47 through 50. Copy the total to line 87. | |

52.   **Is a depreciation schedule available for any of the property listed in Part 8?**
■ No
☐ Yes

53.   **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
■ No
☐ Yes

| Part 9: | **Real property** |
|---|---|

**54. Does the debtor own or lease any real property?**

■ No. Go to Part 10.
☐ Yes Fill in the information below.

| Part 10: | **Intangibles and intellectual property** |
|---|---|

**59. Does the debtor have any interests in intangibles or intellectual property?**

☐ No. Go to Part 11.
■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60.   **Patents, copyrights, trademarks, and trade secrets** | | | |
| 61.   **Internet domain names and websites** | | | |
| 62.   **Licenses, franchises, and royalties** | | | |
| 63.   **Customer lists, mailing lists, or other compilations** Customer list | Unknown | | Unknown |
| 64.   **Other intangibles, or intellectual property** | | | |
| 65.   **Goodwill** Book of Business | Unknown | | Unknown |

| | | |
|---|---|---|
| 66. | **Total of Part 10.** | $0.00 |
| | Add lines 60 through 65. Copy the total to line 89. | |

67.   **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C.§§ 101(41A) and 107?
■ No
☐ Yes

68.   **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
■ No
☐ Yes

69.   **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
■ No
☐ Yes

| Part 11: | **All other assets** |
|---|---|

Case 19-82417-CRJ11    Doc 98    Filed 02/20/20    Entered 02/20/20 14:11:00    Desc Main
Document    Page 32 of 40

Debtor    **H&B Holdings, Inc.**                                Case number *(If known)*  **19-82417**
          Name

70. **Does the debtor own any other assets that have not yet been reported on this form?**
    Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No.  Go to Part 12.
■ Yes Fill in the information below.

|  | Current value of debtor's interest |
|---|---|

71.    **Notes receivable**
       Description (include name of obligor)

72.    **Tax refunds and unused net operating losses (NOLs)**
       Description (for example, federal, state, local)

73.    **Interests in insurance policies or annuities**

74.    **Causes of action against third parties (whether or not a lawsuit has been filed)**
       **Derksen receivable balance & other affirmative claims including slander**

       | Nature of claim | Operating Account, Fraud, Intentional Interference, Defamation | Unknown |
       |---|---|---|
       | Amount requested | $0.00 | |

75.    **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

76.    **Trusts, equitable or future interests in property**

77.    **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

78.    **Total of Part 11.**
       Add lines 71 through 77. Copy the total to line 90.

       | $0.00 |
       |---|

79.    **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
       ■ No
       ☐ Yes

Debtor   **H&B Holdings, Inc.**      Case number *(if known)* **19-82417**
Name

| Part 12: | Summary |
| --- | --- |

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
| --- | --- | --- |
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $40.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $221,401.50 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $10,000.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $5,000.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9* ...............................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $236,441.50 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $236,441.50 |

Case 19-82417-CRJ11    Doc 98    Filed 02/20/20    Entered 02/20/20 14:11:00    Desc Main
Document      Page 34 of 140

# Exhibit C

## Summary of Assets and Liabilities

EXHIBIT C

**Fill in this information to identify the case:**

Debtor name **H&B Holdings, Inc.**

United States Bankruptcy Court for the: NORTHERN DISTRICT OF ALABAMA

Case number (if known) _____

☐ Check if this is an amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals          **12/15**

| Part 1: | Summary of Assets |
| --- | --- |

1. **Schedule A/B: Assets-Real and Personal Property** (Official Form 206A/B)

   **1a. Real property:**
   Copy line 88 from *Schedule A/B*................................................................................... $ 0.00

   **1b. Total personal property:**
   Copy line 91A from *Schedule A/B*.............................................................................. $ 236,441.50

   **1c. Total of all property:**
   Copy line 92 from *Schedule A/B*................................................................................ $ 236,441.50

| Part 2: | Summary of Liabilities |
| --- | --- |

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*.................... $ 12,780.01

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

   **3a. Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*........................................................ $ 21,330.96

   **3b. Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*............................... +$ 7,607,281.94

4. **Total liabilities** ........................................................................................................
   Lines 2 + 3a + 3b                                                                                       $ 7,641,392.91

Label Matrix for local noticing
1126-8
Case 19-82417-CRJ11
NORTHERN DISTRICT OF ALABAMA
Decatur
Fri Feb 21 11:24:53 CST 2020

De Lage Landen Financial Services, Inc.
1111 Old Eagle School Road
Wayne, PA 19087-1453

H&B Holdings, Inc.
4625 Hickory Lane
Tuscumbia, AL 35674-4903

United Lumber & Reman, LLC
980 Ford Road
Muscle Shoals, AL 35661-1118

U. S. Bankruptcy Court
400 Well Street
P. O. Box 2775
Decatur, AL 35602-2775

*Alabama Department of Revenue
PO Box 327483
Montgomery, AL 36132-7483

*Alabama Deptartment of Revenue
Department of Revenue Legal Division
PO Box 320001
Montgomery, AL 36132-0001

*Arnold's Truck Stop, Inc.
1460 Highway 20
Tuscumbia, AL 35674-6078

*CB&S
PO Box 910
Russellville, AL 35653-0910

*Carter Oil Company
PO Box 487
Sheffield, AL 35660-0487

*EV Logistics
26 W. Zarate St.
Rio Grande City, TX 78582-6112

(p)FIRST METRO BANK
406 W AVALON AVENUE
MUSCLE SHOALS AL 35661-2808

*Harvey F. Robbins, III
100 B South Main St.
Tuscumbia, AL 35674-2429

*JRC Transportation, Inc.
PO Box 15101
Newark, NJ 07192-5101

*Nextran Truck Center
PO Box 820
Fultondale, AL 35068-0820

*Ohio Valley Transport, Inc.
750 Economy Dr.
Clarksville, TN 37043-2429

*Premier Trailers, LLC
PO Box 206553
Dallas, TX 75320-6553

*Robbins Properties, Inc.
100 B South Main St.
Tuscumbia, AL 35674-2429

*Shappire Lumber Co., Inc.
109548 Tammany Lane
Hamilton, MT 59840

(p)SUNBELT PAPER & PACKAGING  INC
P O BOX 521
SAGINAW AL 35137-0521

*Taylor Supply Center
c/o Roy Taylor
PO Box 1026
Russellville, AL 35653-1026

*Total Quality Logistics
PO Box 634558
Cincinnati, OH 45263-4558

*Troy Corporation
PO Box 824736
Philadelphia, PA 19182-4736

*United Lumber
980 Ford Rd
Muscle Shoals, AL 35661-1118

*Weyerhauser
PO Box 843568
Dallas, TX 75284-3568

ASM Consulting, Inc.
2949 County Road 30
Florence, AL 35634-6620

Alabama Dept. of Revenue
PO Box 2401
Montgomery, AL 36140-0001

Baggett Services, Inc.
2 South 32nd St.
Birmingham, AL 35233-3018

Beverly Robbins
100 B South Main St.
Tuscumbia, AL 35674-2429

C.H. Robinson Worldwide, Inc.
Receivables Control Corp. (RCC)
7373 Kirkwood Ct., Ste 200
Osseo, MN 55369-5264

De Lage Landen
PO Box 41602
Philadelphia, PA 19101-1602

De Lage Landen, Financial Services
1111 Old Eagle School Road
Attn: Ken Jones, Litigation & Recovery
Wayne, PA 19087-1453

Free State Trucking, LLC
64 Co Rd 3729
PO Box 398
Addison, AL 35540-0398

Global Fire Sprinklers, LLC
4242 Bryson Blvd
Florence, AL 35630-7319

H&B Holding, Inc.
Wells Fargo Bank, N.A.
800 Walnut Street MAC F0005-055
Des Moines, IA 50309-3891

H&B Properties, LLC
100 B South Main St.
Tuscumbia, AL 35674-2429

Haleyville Saw Shop, Inc.
1556 Highway 243 S
Haleyville, AL 35565-7384

Hoker Trucking
30923 52nd Ave
Dixon, IA 52745-9719

Integrated Corporate Solutions, Inc.
PO Box 443
Florence, AL 35631-0443

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

JLE Industries, LLC
119 ICMI Rd, Ste 210
Dunbar, PA 15431-2358

James G. Henderson
Pritchard, McCall & Jones, L.L.C.
505 N 20th Street, Suite 1210
Birmingham, AL 35203-4662

John Ellis Trucking, Inc.
3078 Lake Grove Dr.
Hernando, MS 38632-7900

Joyce White Vance
US Attorney General
1801 4th Ave North
Birmingham, AL 35203-2101

Just Right Services, Inc.
574 Rose of Sharon Rd
Cutler, IL 62238-1100

Karen Schwartz McClure, Esq.
1609 Richard Arrington Jr. Blvd. South
Birmingham, AL 35205-4952

King of Freight, LLC
110 S. Main St., Ste # 300
Wichita, KS 67202-3751

Loretta Lynch US Attorney General
US Dept. of Justice
950 Pennsylvania Ave NW
Washington, DC 20530-0009

Luther Strange
Alabama Attorney General
PO Box 300152
Montgomery, AL 36130-0152

MJS Transportation, Inc.
PO Box 816
Decatur, IN 46733-0816

Miner Saw, Inc.
PO Box 2214
Decatur, AL 35609-2214

Motion Industries, Inc.
PO Box 404130
Atlanta, GA 30384-4130

Nextran Corporation dba Nextran Rental & Lea
Mr. Luis Colon, Director of Credit
8100 Chancellor Drive, Suite 130
Orlando, FL 32809-7664

On Time Truck Hauling
21820 Grand Lancelot Dr.
Kingwood, TX 77339-7700

Pendu MFG, Inc.
718 North Shirk Rd.
New Holland, PA 17557-9721

Pitney Bowes
PO Box 371887
Pittsburgh, PA 15250-7887

Purchase Power
PO Box 371874
Pittsburgh, PA 15250-7874

Quill Corporation
PO Box 37600
Philadelphia, PA 19101-0600

Quill Tom Riggleman
7 Technology Circle
Columbia, SC 29203-9591

Robert M. Ronnlund
Scott Sullivan Streetman & Fox, P.C.
2450 Valleydale Road
Birmingham, AL 35244-2015

Sam T Carter Oil Company Inc
Carter Oil Company Inc
P O Box 487
Sheffield, AL 35660-0487

Secretary of the Treasury
1500 Pennsylvania Ave., NW
Washington, DC 20220-0001


Shoals Rubber & Gasket
PO Box 1786
Decatur, AL 35602-1786

State of Alabama
Department of Revenue Legal Division
PO Box 320001
Montgomery, AL 36132-0001

TW3 c/o Transport Clearing East
4651 Charlotte Park Dr., Ste 450
Charlotte, NC 28217-1910


Three Chimney Express, Inc.
2962 Three Chimney Rd
Viroqua, WI 54665

Timber Products Inspection
PO Box 919
Conyers, GA 30012-0919

Total Quality Logistics, LLC
Attn: Joseph B. Wells, Asst. Corp. Couns
4289 Ivy Pointe Blvd.
Cincinnati, OH 45245-0002


U.S. Securities and Exchange Commission
Regional Director, Branch of Reorganizat
Atlanta Regional Office, Suite 900
950 East Paces Ferry Road
Atlanta, GA 30326-1180

United Lumber & Reman, LLC
c/o Robert M. Ronnlund
Scott Sullivan Streetman & Fox, P.C.
2450 Valleydale Road
Birmingham, AL 35244-2015

United States Attorney
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, AL 35203-2101


United States Bankruptcy Administrator
Northern District of Alabama
1800 Fifth Avenue North
Birmingham, AL 35203-2111

Vulco Auto Supply
416 Buffalo Rd.
Lawrenceburg, TN 38464-3214

Wells Fargo Lift
Manufacturer Services Group
San Francisco, CA 94120


Weyerhaeuser NR Company
220 Occidental Ave S.
Seattle, WA 98104-3120

Douglas B. Hargett
Hall Tanner Hargett P.C.
201 North Water Street
Tuscumbia, AL 35674-1926

G. Rick Hall
Hall Tanner Hargett, P.C.
201 North Water Street
Tuscumbia, AL 35674-1926


Richard M Blythe
United States Bankruptcy Administrator
PO Box 3045
Decatur, AL 35602-3045

Stuart M Maples
Maples Law Firm, PC
200 Clinton Avenue W.
Suite 1000
Huntsville, AL 35801-4919


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


*First Metro Bank
406 West Avalon Ave.
Muscle Shoals, AL 35661

*Sunbelt Paper and Packaging
PO Box 521
Saginaw, AL 35137


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)CB&S Bank                    (u)First Metro Bank                    End of Label Matrix
                                                                       Mailable recipients    79
                                                                       Bypassed recipients     2
                                                                       Total                  81