# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: H&B HOLDINGS, INC. ) | | Case No.: 19-82417-CRJ-11 |
| ) | | |
| EIN: xx-xxx4516 ) | | |
| ) | | |
| Debtor. ) | | CHAPTER 11 |
| ) | | |

**OBJECTION TO CONFIRMATION OF THE DEBTOR'S
AMENDED PLAN OF REORGANIZATION**

COMES NOW United Lumber and Reman, LLC ("**ULR**"), an unsecured creditor in the above-styled case, and, pursuant to 11 U.S.C. § 1129, files this Objection to Confirmation of the Debtor's plan of reorganization on grounds that follow:

**Background.**

1. H&B Holdings, Inc. (the "**Debtor**") commenced this case on August 13, 2019.

2. Debtor's disclosure statement lists Beverly Robbins and Harvey F. Robbins III as the "Principals of the Debtor." [Doc. 98, p. 6.]. Mr. Robbins signed the Debtor's bankruptcy petition as its President. [Doc. 1, p. 4].

3. The Debtor's plan of reorganization proposes leasing virtually all of its assets to H&B Properties, LLC, a company that Mr. and Mrs. Robbins solely own.

4. The Debtor also leases real property from Robbins Properties, Inc., a company for which Mr. Robbins serves as the registered agent and incorporator.

5. Pursuant to 11 U.S.C. § 101(31), Mr. and Mrs. Robbins, Robbins Properties, Inc., and H&B Properties, LLC qualify as "insiders" of the Debtor.

6. It is unclear from the disclosure statement and plan of reorganization what, if any, business activities the Debtor will pursue after confirmation, aside from passively leasing its assets to an insider-affiliate company and paying rent to a company owned by its principals.

7. The Debtor's plan, if confirmed, will enrich insiders while bone fide unsecured creditors should expect little to no distribution.

## The Plan is Not Feasible.

8. Over the course of this case, the Debtor has been unprofitable: according to the Debtor's August 2019 operating report (the first operating report), it began this case with cash on hand totaling $81,186.00 [Doc. 48]. According to the most recent filed operating report, the Debtor had cash on hand totaling $404.00 [Doc. 65].

9. Between August 2019 and January 2020, the Debtor reduced its cash holdings by over $80,000.00 while increasing its accounts receivable under 30 day old by less than $5,000.00.

10. Further **the Debtor is not paying its post-petition accounts payable**: its January 2020 operating report states that the Debtor has incurred $196,699.56 in unpaid post-petition accounts payable.

11. The Debtor's February 2020 operating report is currently overdue, but it is unclear how the Debtor's financial position could grow much worse

12. **The Debtor's plan of reorganization states that it cannot afford to pay its post-petition rent obligations**, creating an ongoing and increasing administrative expense for the estate to bare. [Doc. 99, pp. 7-8].

13. The Debtor's disclosure statement contains the following: "Mr. Robbins receives no salary or other benefits, and would not receive salary or benefits under the Plan. In fact, Mr. Robbins has subsidized operations in the past and would continue to do so under the Plan." [Doc. 98, p. 11]. It appears that the Debtor will never be profitable on its own.

14. The Debtor's disclosure statement and plan of reorganization do not contain pro forma financials to allow unsecured creditors to understand what, if any, distributions they can expect over the course of the plan.

15. The disclosure statement states that Debtor's Chapter 11 general counsel is owed $55,000.00 for services rendered.

16. The Debtor now seeks Court-authority to hire additional special counsel and pay their fees on an unrestricted hourly basis.

2

17. **The Debtor appears to have no money to pay its general counsel, proposed special counsel, or unpaid post-petition accounts payable that constitute growing administrative expenses.** Much of its accounts receivable appears uncollectible.

18. The Debtor has provided no evidence that it can satisfy over $250,000.00 in administrative expenses / post-petition account payable when its cash-on-hand is less than $500.00.

19. The Debtor's plan of reorganization is unfeasible because the Debtor is not profitable and over the course of this case has shown no ability to generate a profit.

### The Plan Violates the Absolute Priority Rule.

20. The Debtor's plan of reorganization proposes that it will retain ownership of assets and lease that property to insider companies owned by the Debtor's principals.

21. The Debtor has given no justification to support such self-dealing transactions.

22. Further, the plan of reorganization calls for Mr. Robbins, an insider-creditor of the Debtor, to provide the bankruptcy estate with litigation financing and proposes that he will be repaid from litigation proceeds ahead of the Debtor's creditors. [Doc. 99, p. 8].

23. The Debtor has given no disclosure regarding the terms of any financing Mr. Robbins has or will provide to the Debtor.

24. The "absolute priority rule specifically prevents a holder of equity interests — whose claim is junior to that of unsecured creditors — from retaining property interests under the plan unless dissenting impaired unsecured creditor classes are paid in full." *In re Lett*, 632 F. 3d 1216, 1219-1220 (11th Cir. 2011).

25. 11 U.S.C. § 1129 requires that the Debtor must pay its arms-length unsecured creditors in full before providing benefits to Mr. Robbins in his capacity as a creditor, equity security holder, financier, or as the owner of self-dealing affiliate companies.

26. This plan cannot be confirmed as presently presented because it violates the Absolute Priority Rule and puts Mr. Robbins personal interests ahead of the Debtor's creditors.

3

### The Plan is Not Proposed in Good Faith.

27. The plan does not include a budget or pro forma financials. It is unclear when the Debtor ever expects to make a profit to distribute to the unsecured creditors.

28. Further, the Debtor does not designate or provide for a third-party to audit its future financials. Without some independent party reviewing the Debtor's future performance and reporting on its profitability to the unsecured creditors, the Debtor has no incentive to ever provide a distribution to its unsecured creditors.

29. Aside from the proceeds from a contingent business torts lawsuit (which likely would only provide a distribution to the mounting administrative expense and post-petition accounts payable claims), it appears that the Debtor does not intend to make any distributions to the unsecured creditors over the course of the plan.

30. The plan provides many benefits to the Debtor and its insiders at the expense of unsecured creditors. The Debtor has failed to propose a plan in good faith.

### Plan Contains Impermissible Discharge Language.

31. Sections 6.03 and 9.08 of the Debtor's plan provides the Debtor with a discharge upon confirmation and satisfaction of all claims.

32. Given that the Debtor will stop actively engaging in business and instead lease its assets to insider-affiliates (while still paying rent to another affiliate of its principal shareholder), such a discharge appears to violate 11 U.S.C. § 1141(d)(3) and is impermissible.

33. ULR possesses claims against both the Debtor and Mr. Robbins. The Debtor objects to plan of reorganization Sections 6.03 and 9.08, and to the plan in general, to the extent it grants any releases, stays, or otherwise modifies the rights of any party to pursue any claim against non-debtor entities or persons following confirmation.

### Specific Objections Arising Under 11 U.S.C. § 1129.

34. The plan is not proposed in good faith, as discussed above. 11 U.S.C. § 1129(a)(3).

35. The Debtor's plan does not state if any insiders other than Mr. Robbins will be compensated by the Debtor. The Debtor has not provided a market analysis of whether the rates it proposes to pay and receive from insider-companies are market rates. 11 U.S.C. § 1129(a)(5).

36. Given that the Debtor loses money every month and appears to propose a $0.00 distribution to unsecured creditors over the life of the plan, there is no evidence that unsecured creditors would receive more from this plan than they would in a chapter 7 liquidation. 11 U.S.C. § 1129(a)(A)(7)(ii).

37. 11 U.S.C. § 1129(a)(8) will likely bar confirmation of this plan.

38. As argued in an accompanying motion, insiders have impermissibly voted to accept the plan. 11 U.S.C. §1129(a)(10).

39. The plan appears unfeasible and likely to be followed by a liquidation or a subsequent reorganization, as discussed above. 11 U.S.C. § 1129(a)(11).

40. The plan is not fair and equitable, and it violates the absolutely priority rule, as discussed above. U.S.C. § 1129(b).

41. To the extent the plan could be construed to grant releases of any nature to any non-debtor third-parties, such provisions are unwarranted and not support by the caselaw and the facts present. 11 U.S.C. §§ 1129(a)(1)-(2).

WHEREFORE, premises considered, United Lumber and Reman, LLC respectfully requests that this Honorable Court enter an Order: denying confirmation of the Debtor's plan of reorganization; and granting such further relief as this Court deems just and proper.

Respectfully submitted this the 20th day of March, 2020.

*/s/ Tazewell T. Shepard IV*
   Tazewell T. Shepard III
   Tazewell T. Shepard IV
*Attorneys for the Movant*

**SPARKMAN, SHEPARD & MORRIS, P.C.**
P.O. Box 19045
Huntsville, AL 35804
Tel: (256) 512-9924
ty@ssmattorneys.com

5

## CERTIFICATE OF SERVICE

This is to certify that I have this the 20th day of March, 2020 I have served the foregoing motion on all parties as listed on the Clerk's Certified Matrix, the Debtor, the Debtor's counsel, and the Office of the Bankruptcy Administrator by electronic service through the Court's CM/ECF system and/or by placing a copy of same in the United States Mail, postage pre-paid.

*/s/ Tazewell T. Shepard IV*
Tazewell T. Shepard IV