IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| H&B HOLDINGS, INC., ) | |
| ) | CASE NO. 19-82417-CRJ11 |
| EIN: XX-XXX516 ) | CHAPTER 11 |
| ) | |
| DEBTOR. ) | |

## MEMORANDUM IN SUPPORT OF CONFIRMATION

COMES NOW H&B Holdings, Inc., ("Debtor"), as debtor and debtor-in-possession ("Debtor"), in compliance with paragraph 6 of the Order Approving Second Amended Disclosure Statement; Scheduling Confirmation Hearing; Fixing Time for Objecting to Confirmation and For Filing Acceptances or Rejections of Plan [Doc 102] and submits following memorandum (the "Memorandum") in support of confirmation of its Chapter 11 Plan (the "Plan"). Except as otherwise defined, all capitalized terms in the Memorandum have the same meaning set forth in the Plan.

## BACKGROUND

The Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") on August 13, 2019. The Debtor is currently operating and managing its affairs as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

On or about December 10, 2019, the Debtor filed its Disclosure Statement for Chapter 11 Plan [Doc 67] and Chapter 11 Plan of Reorganization [Doc 68]. On or about February 10, 2020, Debtor filed its First Amended Disclosure Statement for Chapter 11 Plan [Doc 89] and First Amended Chapter 11 Plan of Reorganization [Doc 90]. On February 21, 2020, Debtor filed its Second Amended Disclosure Statement for Chapter 11 Plan [Doc 98] (the "Disclosure Statement") and its Second Amended Chapter 11 Plan of Reorganization [Doc 99] (the "Plan"). By Order dated February 24, 2020, the Court approved the Debtor's Disclosure Statement under Section 1125 of the Bankruptcy Code. *See* Doc 102. On March 19, 2020, Debtor filed its Third Amended Chapter 11 Plan of Reorganization [Doc 127] and Motion to Modify Plan Prior to Confirmation [Doc 128].

## SUMMARY OF KEY PLAN PROVISIONS

**Class 1 – Allowed Secured of De Lage Landen Financial Services.**
Class 1 shall consist of the Allowed Secured Claim of De Lage in the amount of $28,424.16. The De Lage collateral has been surrendered, satisfying the secured claim of De Lage. De Lage shall have 60 days from the Effective Date to file an unsecured deficiency claim.

1

**Class 2 – Allowed Secured of First Metro Bank.**
Class 2 shall consist of the Allowed Secured Claim of First Metro. It is anticipated that First Metro will continue to be serviced by the lease, or paid off by the sale of its real estate collateral owned by H&B Properties, LLC, a related non-filing entity.

**Class 3 – Allowed Secured of CB&S Bank.**
Class 3 shall consist of the Allowed Secured Claim of CB&S. It is anticipated that CB&S will continue to be serviced by the lease, or paid off by the sale of its real estate collateral owned by H&B Properties, LLC, a related non-filing entity.

**Class 4 - Allowed Unsecured Claims.**
Class 4 consists of the Allowed Unsecured Claims of all other unsecured creditors. The Allowed Unsecured Claims of the unsecured creditors will be paid the net proceeds of the Derksen Claim. This gross claim less Administrative Expenses and Tax Claims.

It is anticipated that the Derksen Claim may be worth $130,000.00-$300,000.00.

**Class 5 – Equity Interest Holders.**
Class5 shall consist of the equity position of Member Harvey F. Robbins, III in the Debtor. The Member, or his assigns, will receive no equity distribution (other than salary) unless and until Class 4 is paid in full.

## VOTING

**A.     Acceptance of Plan by Voting.**

For the Plan to be accepted by an impaired class of claims, it must be accepted by holders of Claims in such Class that hold at least two-thirds in dollar amount and one-half in number of the Claims in such Class held by creditors that actually vote.  A Class is impaired if the legal, equitable, or contractual rights of the members of such class are modified or altered by the Plan (with an exception, not applicable to the Plan, for curing defaults, reinstating maturity and compensating certain damages).  Classes 1, 2, 3, 4 and 5 in this Plan are impaired and entitled to vote.

If any impaired Class does not accept the Plan, and at least one impaired Class accepts the Plan, the Debtors may seek confirmation of the Plan under the "cram down" provisions of Section 1129(b) of the Bankruptcy Code.  To obtain confirmation despite non-acceptance by one or more impaired Classes, the Debtors must show to the Bankruptcy Court that the Plan does not discriminate unfairly and is fair and equitable with respect to each such Class.  Each of these requirements is discussed further, as follows:

     **1.     Unfair Discrimination.**

A plan does not discriminate unfairly with respect to a non-accepting Class if it protects the rights of such Class in a manner consistent with the treatment of other Classes with similar rights.  The unfair discrimination test does not require that similarly situated Classes be treated in

2

exactly the same way. The test requires that such Classes be treated substantially similarly *or* if not treated substantially similarly, that differences in treatment be fair.

**2.    Fair and Equitable.**

A plan does not discriminate unfairly if either (a) each holder of a Claim or Interest in the non-accepting Class receives or retains under the Plan property of a value equal to the Allowed amount of such Claim or Interest; or (b) the holders of Claims or Interests that are junior to such Class receive or retain nothing under the Plan on account of such Claims or Interests (the "Absolute Priority Rule").

**B.    Feasibility.**

As a condition to confirmation of the Plan, Section 1129(a) of the Bankruptcy Code requires that Confirmation is not likely to be followed by the liquidation of the Debtor (except as provided in the Plan) or the need for further financial reorganization. The Debtor believes that the Plan provides general unsecured creditors with the best return that can be achieved in this case. Under the Plan, Administrative Claims and Priority Clams will be paid in full (or as otherwise agreed to by the holders of such Claims), and Allowed Unsecured Creditors will receive a distribution that exceeds any distribution that they would receive were the Chapter 11 case converted to a case under Chapter 7 of the Bankruptcy Code.

The Plan is supported by all of the impaired Classes of Claims that voted on the Plan. Specifically, Class 1 (Allowed Secured Claim of De Lage Landen Financial Services), Class 2 (Allowed Secured Claim of First Metro Bank), Class 3 (Allowed Secured Claim of CB&S Bank), and Class 4 (Allow Unsecured Claims) are the only Classes entitled to vote on the Plan.

The Plan complies with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. As demonstrated herein, the Plan satisfies all of the requirements of Sections 1122, 1123, and each element of Section 1129 of the Bankruptcy Code. Further, the Plan complies with Rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**OBJECTIONS**

1.    On March 20, 2020, United Lumber & Reman ("ULR") filed its Objection to Confirmation of the Debtor's Amended Plan of Reorganization [Doc 132].

The Debtor and ULR are working together to address the issues made the basis its objection. ULR expressed its desire to work with the Debtor and not be problematic.

Beverly Robbins is only included due to being a guarantor on the First Metro note. She is not affiliated with the Debtor or H&B Properties, LLC in any other way.

The property ("assets") in Debtor's possession belongs to H&B Properties, LLC. Debtor was to lease H&B Properties, LLC's assets, but failed. Therefore, H&B Properties, LLC is taking back possession of its own property. H&B Properties, LLC will lease its property to other

businesses to pay the Debtor's debt. Beverly Robbins does not own H&B Properties, LLC. H&B Properties, LLC is a single member LLC with Mr. Robbins being the only member.

Robbins Properties, Inc does not lease anything to the Debtor or H&B Properties, LLC. The Debtor owes money to Robbins Properties, Inc for various things which equate to a loan.

Any and all rent collected by H&B Properties, LLC will be used to pay the Debtor's debt. Mr. Robbins will pay any remaining deficit.

The Plan does not enrich insiders in any way. To the contrary, the Plan commits Mr. Robbins to years of financial strain as he tries to capture the losses Debtor accrued. A MAI commercial appraiser recently appraised the assets and valued all the property and equipment at $2,250,000. Based on this appraisal there is a $1,750,000 deficit between remaining balance of the Notes and the current value of the collateral.

Robbins Properties, Inc and H&B Properties, LLC are post-petition accounts payable who are not being paid. Mr. Robbins voluntarily chose to forgo any payments to these entities. Regardless, these companies are making the bank payments for the Debtor. Robbins Properties, Inc and H&B Properties, LLC also paid the $30k down payment to renew the Debtor's property insurance and Debtor's monthly insurance payments. Any available funds to the Debtor are going to other post-petition vendors.

2. On March 20, 2020, CB&S Bank filed its Objection to Confirmation of Debtor's Third Amended Plan of Reorganization Dated March 19, 2020 [Doc 133]. The objection of CB&S Bank has been resolved in principal.

## **THE PLAN IS DUE TO BE CONFIRMED**

The Debtor, as plan proponent, bears the burden of showing by a preponderance of the evidence that the Plan complies with each element of § 1129 of the Bankruptcy Code. *In re Briscoe Enters, II*, 994 F.2d 1160, 1163 (5th Cir. 1993), *cert. denied*, 510 U.S. 992 (1993); *see Grogan v. Garner*, 498 U.S. 279, 286 (1991). Objecting creditors bear the burden of producing evidence to support their objections. *Matter of Genesis Health Ventures*, 266 B.R. 591, 599 (Bankr. D. Del. 2001). The Debtor may rely on the court record as well as the evidence presented at the confirmation hearing. *See, e.g., In re Gulfstar Indus.*, 236 B.R. 75, 77-78 (M.D. Fla. 1999).

It is anticipated that the record in this case, including testimony and other evidence offered in support of confirmation, will show the Plan meets each and every element of Section 1129(a) and (b). Accordingly, the Plan is due to be confirmed. *See*, 11 U.S.C. § 1129(a) and (b) (court shall confirm a plan that satisfies listed requirements).

A.  **Section 1129(a)(1).**

Section 1129(a)(1) requires the Plan to comply with the applicable provisions of the Bankruptcy Code. The legislative history suggests that subsection (a)(1) primarily is intended to ensure that plans comply with §§ 1122 and 1123 of the Bankruptcy Code. *See*, H.R. Rep. No. 585, 95th Cong., 1st Sess. 412 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6368; S. Rep. No 989, 95th Cong. 2d Sess. 126 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5912.

1.  **The Plan Meets the Applicable Provisions of the Bankruptcy Code.**

The face of the Plan demonstrates compliance with Sections 1122 and 1123 of the Bankruptcy Code. The Plan designates classes, specifies a treatment for each class, specifies impaired and unimpaired classes and provides the same treatment for each claim or interest in each particular class. The Plan provides adequate means for its implementation by entering into lease agreements, funded by H&B Properties, LLC and Mr. Robbins, with C&T Sales, LLC, Pallet Repairs, LLC and Lumber One. In addition H&B Properties, LLC will assume both banknotes identified in Class 2 and Class 3.

The Debtor anticipates this will generate sufficient funds after the Effective Date of the Plan to fund fully its ongoing operations and to pay all obligations set forth in the Plan as and when due. Accordingly, the Plan meets the requirements of §§ 1122 and 1123(a)(1)-(5).

In the absence of apparent and significant harm to creditor rights due to the alleged violation of other Bankruptcy Code provisions, an affirmative showing of compliance with Sections 1122 and 1123 is sufficient to satisfy Section 1129(a)(1). *See Collier* ¶1129.03[1] at 1129-25 to 26. Without specific objection, the Debtor is not required to present evidence with respect to each and every provision of the Bankruptcy Code. *See, e.g., Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648 (2nd Cir. 1988); *In re Aspen Limousine Servs.*, 193 B.R. 325, 339-40 (D. Colo 1996); *see also*, *Genesis*, 266 B.R. at 599 (creditors must produce evidence to support objection). The Plan clearly meets the requirements of §§ 1122 and 1123. Thus, the Court should find the Plan complies with the applicable provisions of the Bankruptcy Code and satisfies § 1129(a)(1).

B.  **1129(a)(2).**

Section 1129(a)(2) requires the proponent of a plan to comply with the applicable provisions of the Bankruptcy Code. According to the legislative history, subsection (a)(2) is intended to ensure compliance with the disclosure requirements of § 1125 of the Bankruptcy Code. H.R. Rep. 595, 95th Cong., 1st Sess. 412 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6368; S. Rep. No. 989, 95th Cong., 2nd Sess. 126 (1978), *reprinted in* U.S. Code Cong. & Admin. News 5787, 5912; *see Cajun Elec. Power Co-Op, Inc.,* 150 F.3d 503, 512 n.3 (5th Cir. 1998); *cert. denied*, 526 U.S. 114 (1999); *In re Trans World Airlines, Inc.*, 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995). The record reflects that the Court approved the Disclosure Statement under § 1125 by Order dated February 24, 2020 (the "<u>Disclosure Order</u>"). The Disclosure Statement was properly transmitted in accordance with the terms of the Disclosure Order and

Bankruptcy Rules 2002 and 3017. Accordingly, the Debtor, as a proponent of the Plan, has complied with the disclosure requirements of § 1125.

Subsection 1129(a)(2) requires compliance with the Bankruptcy Code as a whole. However, in the absence of any allegation or objection properly supported by evidence that the plan proponent has violated a specific, material provision of the Bankruptcy Code (which violation remains unremedied), 1129(a)(2) is satisfied by an affirmative showing with respect to disclosure requirements. *In re Landing Assocs, Ltd.*, 157 B.R. 791, 811 (Bankr. W.D. Tex. 1993); *see Kane*, 843 F.2d at 648 (applying harmless error rule of Fed. R. Bankr. P. 9005 with respect to statutory compliance requirements so that "relief under the bankruptcy laws is not to be withheld because of technicalities"). Accordingly, the record shows that the Debtor, as a proponent of the Plan, has met the requirements of § 1129(a)(2).

C. 1129(a)(3).

Section 1129(a)(3) requires that the Plan has been filed in good faith and not by any means forbidden by law. No party has raised an objection under subsection (a)(3). Accordingly, the Court may determine that subsection (a)(3) is satisfied without further evidence. *See* Fed. R. Bankr. P. 3020(b)(2); *Genesis*, 266 B.R. at 599.

Good faith requires only a reasonable likelihood that the Plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. *In re McCormick*, 49 F.3d 1524, 1526 (11th Cir. 1995). The Plan itself shows a reasonable likelihood of achieving a proper result under the Bankruptcy Code. The Debtor is not likely to need further financial reorganization. Accordingly, the Plan is feasible and the Debtor can demonstrate that the Plan is not likely to be followed by the liquidation of the Debtor (except as provided in the Plan) or the need for further financial reorganization of the Debtor. Accordingly, the Debtor has proposed the Plan in good faith.

In addition to good faith, subsection (a)(3) requires only that the Plan's proposal (as opposed to the contents of the Plan) comply with applicable non-bankruptcy law. *See In re General Development Corp.*, 135 B.R. 1002, 1007 (Bankr. S.D. Fla. 1991). In the absence of any objection or allegation that Debtor has not complied with applicable law, the Court has ample evidence to find that § 1129(a)(3) is satisfied. *See id.*, *see also*, *Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1160 (5th Cir. 1988); *In re Koelbl*, 751 F.2d 137, 139 (2nd Cir. 1984); *Genesis*, 255 B.R. at 599.

D. 1129(a)(4).

Section 1129(a)(4) requires that the payments for services in connection with the case or the Plan have been approved by or are subject to approval by the Court as reasonable. The Plan provides that Fee Claims shall be paid only upon application and approval pursuant to § 330 of the Bankruptcy Code. Accordingly, the Plan satisfies § 1129(a)(4). *See In re Schutlz*, 69 B.R. 629, 631-632 (D.S.D. 1987).

6

### E. 1129(a)(5).

Section 1129(a)(5) requires the Debtor to disclose the identity and affiliations of any individual proposed to serve as an officer of the Debtor post-confirmation. The purpose of subsection (a)(5) is to ensure that the appointment of officers is consistent with the interests of creditors and public policy. *See* 11 U.S.C. §§ 1129(a)(5)(A)(ii). The Debtor has disclosed the identity and any affiliations of all of the individuals proposed to serve as officers and directors of the Debtor after the Plan is confirmed, and the compensation to be paid to such individuals after confirmation of the Plan. In the Debtor's opinion, the appointment or continuance in office of such individuals is consistent with the interests of creditors. Accordingly, § 1129(a)(5) is satified.

### F. 1129(a)(6).

Section 1129(a)(6) preserves the right of any governmental regulatory commission with jurisdiction over rates to approve any rate change provided for in a plan. The Debtor believes and is reliably informed that it does not charge any rate that is subject to the jurisdiction of any governmental regulatory commission which would require it to seek such commission's approval of any rate changes. Accordingly, § 1129(a)(6) is satisfied.

### G. 1129(a)(7).

Section 1129(a)(7) provides that holders of claims or interests in each impaired class must either, accept the Plan or receive or retain under the Plan on account of such claims or interests, property of a value that is not less than the amount such holders would retain or receive if the debtors were liquidated under chapter 7. The Plan complies with § 1129(a)(7).

Based on the foregoing, the record shows that each creditor will receive at least as much under the Plan than in chapter 7. Therefore, the Plan satisfies § 1129(a)(7).

### H. 1129(a)(8).

Section 1129(a)(8) requires that each class of claims or interests either accept the Plan or not be impaired under the Plan. It is anticipated that a settlement will be reached with the secured lender which will result in its support of the Plan.

### I. 1129(a)(9).

Section 1129(a)(9) requires the Plan to provide for full payment of all administrative expense claims and other claims entitled to priority under § 507(a)(1)-(9) of the Bankruptcy Code. The Plan provides that Allowed Administrative Expense Claims and Allowed Tax Claims (if applicable) to be paid in full in cash on or at the Effective Date, except to the extent the holder of the Claims accepts other settlement. Accordingly, the Plan complies with § 1129(a)(9).

### J. 1129(a)(10).

Section 1129(a)(10) provides that if a class is impaired, at least one impaired class must vote in favor of the Plan. The anticipated settlement with the secured creditor, and its support of the Plan, will result in the satisfaction of this element.

### K. 1129(a)(11).

Section 1129(a)(11) requires that confirmation is not likely to be followed by the liquidation or further reorganization of the Debtor unless such liquidation or reorganization is proposed in the Plan. The Plan provides adequate means for its implementation and is not likely to be followed by further liquidation and reorganization.

H&B Properties, LLC, which is funded by Mr. Robbins, will lease the property to third parties in order to reduce the monthly deficit or eliminate it altogether. In addition, H&B Properties, LLC will assume both banknotes.

The treatment operations are to be leased to C&T Sales, LLC for $15,000.00 per month, subject to approval by this Court. The pallet operations will be leased to Pallet Repairs, LLC, (an entity owned by Mr. Robbins) for $5,000.00 per month. The yard or "white" operations are being negotiated to lease for approximately $8,500.00 per month to Lumber One.

The resulting leases will leave a shortfall to the secured lenders of $2,000.00 per month, which will be funded by Mr. Robbins.

Mr. Robbins has also agreed to fund the Derksen Claim, from which the net proceeds, (after repaying Mr. Robbins for fees expended would be used to pay unsecured creditors pro rata. It is anticipated that unsecured creditors would be returned from
$100,000.00 to $250,000.00.

The Debtor anticipates this will generate sufficient funds after the Effective Date of the Plan to fund fully its ongoing operations and to pay all obligations set forth in the Plan as and when due. Accordingly, the Plan satisfies § 1129(a)(11). *See, e.g., In re T-H New Orleans, Ltd. Partnership*, 116 F.3d 790, 801-02 (5th Cir. 1997); *In re Travelstead*, 227 B.R. 638, 651 (D. Md. 1998).

### L. 1129(a)(12).

Section 1129(a)(12) requires payment of certain statutorily mandated fees pursuant to 28 U.S.C. § 1930. The Plan provides for payment of all of these fees as Administrative Expense Claims. *See* Section III. Accordingly, the Plan satisfies § 1129(a)(12).

### M. 1129(a)(13).

Section 1129(a)(13) requires the continuation of payment for certain retiree medical benefits, as defined in § 1114 of the Bankruptcy Code, for the duration of the period the debtor has obligated itself to provide such benefits. The Debtor did not—prior to or after its Chapter 11

8

Case 19-82417-CRJ11   Doc 139   Filed 03/23/20   Entered 03/23/20 15:20:13   Desc
Main Document    Page 8 of 10

filing—provide any retiree benefits to any of its employees. Accordingly, § 1129(a)(13) is not applicable and therefore has been satisfied.

### N. 1129(a)(14) and (15).

Because the Debtor is a corporation, Bankruptcy Code § 1129(a)(14)-(15), which relate to domestic support obligations and required payments by individual debtors, are not applicable and therefore are satisfied.

### O. 1129(a)(16).

Section 1129(a)(16) requires that all transfers of property under the plan be made in accordance with any applicable provisions of nonbankrutpcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust. Because the Plan does not provide for the transfer of property, § 1129(a)(16) is satisfied.

## **CONCLUSION**

Based on the foregoing, the Plan is due to be confirmed.

Respectfully submitted on March 23, 2020.

> */s/ Stuart M. Maples*
> STUART M. MAPLES
> (ABS-1974-S69S)

MAPLES LAW FIRM, PC
200 Clinton Avenue West, Suite 1000
Huntsville, Alabama 35801
Tel: (256) 489-9779
Fax: (256) 489-9720
smaples@mapleslawfirmpc.com

9

## CERTIFICATE OF SERVICE

  I do hereby certify that on March 23, 2020, a copy of the foregoing document was served on the following by Electronic Case Filing a copy of the same.

Richard Blythe
*Bankruptcy Administrator*
Bankruptcy Administrator
P.O. Box 3045
Decatur, Alabama 35602
richard_blythe@alnba.uscourts.gov

20 largest creditors

All parties requesting notice

                  /s/ *Stuart M. Maples*
                  STUART M. MAPLES